IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| DOUGLAS FRAZIER, | CASE NO.  8:18-cv-160 |
| Plaintiff, | |
| vs. | **COURT'S NOTES AND RULINGS** |
| COUNTY OF DOUGLAS, NEBRASKA, and JAY WINEINGER, in his official capacity,[i] | **ON THE PARTIES' PROPOSED FINAL PRETRIAL CONFERENCE ORDER** |
| Defendants. | |

PRELIMINARY STATEMENT by the undersigned Magistrate Judge:

After working with the parties for 90 minutes on March 2, 2021, counsel were directed to further confer and attempt to prepare a pretrial conference order consistent with the court's summary judgment ruling and the court's local rules. The document below is the outcome of that additional effort.

Plaintiff's objections are highlighted in green. Defendants' objections are raised in 27 footnotes.

To avoid additional confusion within the document, I have used endnotes for entering rulings on objections, and for re-drafting of the controverted issues section, as needed. In re-drafting the controverted issues, I relied heavily on the parties' briefing on their cross-motions for summary judgment because, by that point, the controverted issues were or should have been fully identified and disclosed to the opposing party and the court. I also referred to the operative pleadings, the parties' Rule 26(f) Report, and Plaintiff's interrogatory responses.

All text by the magistrate judge is typed in blue. I have not secured the signatures of counsel, concluding such efforts would further delay entry of a Pretrial Conference Order for a case that will be tried next week.

The final pretrial conference order, excluding objections and as re-drafted and signed by the undersigned magistrate judge, will be separately filed.

*********************************************************

A final pretrial conference was held on the 2nd day of March, 2021.  Appearing for the parties as counsel were:

|                    |                        |
|--------------------|------------------------|
| For the Plaintiff: | Kathleen M. Neary      |
| For the Defendant: | Meghan M. Bothe        |
|                    | Jimmie L. Pinkham III  |
|                    | Timothy K. Dolan       |

**(A)** **Exhibits.**  The parties' joint exhibit list is attached.

The parties reserve the right to use demonstrative exhibits, and they will make those demonstrative exhibits available to other parties for inspection at a mutually agreed upon date. The parties further reserve the right to use any other party's exhibits, including those for which the parties' objection(s) and/or motions in *limine* were denied, and to offer additional exhibits in rebuttal.

> Caution:  Upon express approval of the judge holding the pretrial conference for good cause shown, the parties may be authorized to defer listing of exhibits or objections until a later date to be specified by the judge holding the pretrial conference.  The mere listing of an exhibit on an exhibit list by a party does not mean it can be offered into evidence by the adverse party without all necessary evidentiary prerequisites being met.

**(B)** **Uncontroverted Facts.**  The parties have agreed that the following may be accepted as established facts for purposes of this case only:

1.  At all times alleged, Plaintiff Douglas Frazier ("Frazier") was a resident of Douglas County, Nebraska.

2.  At all times alleged, Defendant Douglas County, Nebraska ("Douglas County") was a political subdivision of the State of Nebraska.

3.  At all times alleged, Timothy Dunning ("Dunning") was the Sheriff of Douglas County, Nebraska.

4. At all times alleged, the Douglas County's Sheriff's Office ("DCSO") was a law enforcement agency operated by Douglas County, Nebraska.

5. Frazier has exhausted his administrative prerequisites prior to filing suit. His claims were made timely.

**(C)** **Controverted and Unresolved Issues.** As limited by and consistent with Judge Bataillon's summary judgment ruling, (Filing No. 137), the issues remaining to be determined and the unresolved matters for the court's attention are:

Plaintiff's Claims:[ii]

I.    Unofficial Custom or Practice of Douglas County[1] [iii]

    Elements:

    1.    As of November 4, 2015, Douglas County had an unofficial custom or practice of allowing the deployment of K-9s to apprehend suspects in a manner constituting use of excessive force and/or unnecessary force contrary to its general orders and/or bureau directives; and/or

    2.    As of November 4, 2015, Douglas County had an unofficial custom or practice of allowing the deployment of K-9s off-leash to apprehend suspects in a manner contrary to its general orders and/or bureau directives; and/or

---

[1] First, Douglas County requests that each of Plaintiff's unconstitutional custom claims be listed individually as there are three elements that will have to be proven with respect to each custom claim. Second, Douglas County objects to Plaintiff's articulation of his "custom" claim because it does not accurately reflect his burden of proof. To establish a claim for "custom", Plaintiff must prove: (1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the Douglas County's employees; (2) deliberate indifference to or tacit authorization of such conduct by Douglas County's policymaking official after notice to that official of the misconduct; and (3) Plaintiff was injured by acts pursuant to Douglas County's custom, i.e., that the custom was a moving force behind the constitutional violation. *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016); *Thelma D. ex rel. Delores A. v. Bd. of Educ. of City of St. Louis*, 934 F.2d 929, 932-33 (8th Cir. 1991). The instructions to the Pretrial Conference Order as provided on the form document on the website for the U.S. District Court for the District of Nebraska plainly states that the parties are to "[l]ist all legal issues remaining to be determined, setting out in detail each element of the claim or defense." As written, Plaintiff has not listed "in detail each element of the claim." Plaintiff's customs claims listed below do not demonstrate that he must prove the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the Douglas County's employees that policymaking officials knew of and were deliberately indifferent to – instead the claims merely accuse Douglas County of practices contrary to its written policies without establishing any legal elements Plaintiff must prove.

3.      As of November 4, 2015, Douglas County had an unofficial custom or practice of failing to use more reasonable and/or less extreme and/or less lethal methods to apprehend suspects in a manner contrary to its general orders and bureau directives; and/or

4.      As of November 4, 2015, Douglas County had an unofficial custom or practice of allowing the deployment of K-9s to intimidate, coerce or frighten persons and/or suspects unnecessarily contrary to its general orders and/or bureau directives;[2] and/or

5.      As of November 4, 2015, Douglas County had an unofficial custom or practice of allowing the deployment of and/or utilization of a K-9 to apprehend a subject who was not able to resist or escape contrary to its general orders and/or bureau directives; and/or

6.      As of November 4, 2015, Douglas County had an unofficial custom or practice of failing to command that the K-9 disengage and/or call off the K-9 as soon as the suspect was subdued or complied with the deputy's direction and/or failed to reasonably control the K-9 contrary to its general orders and/or bureau directives;[3] and/or

7.      As of November 4, 2015, contrary to its general orders or bureau directives, Douglas County had an unofficial custom or practice of deploying a K-9 when the suspect may be under the influence of drugs or alcohol.[4]

---

[2] First, Douglas County incorporates Footnote 1 into this objection.  Second, Douglas County objects to the inclusion of the custom described herein because it has never before been disclosed.  Plaintiff's answer to Douglas County's interrogatory regarding an actionable "custom" incorporated his answers to prior Interrogatories (which had asked about policies). The particular violation of DCSO policies described in this 4th custom claim was not presented in the incorporated interrogatory answer.  *See* Plaintiff's Answers to Douglas County's First Set of Interrogatories, Nos. 1-2.  At no point in this lawsuit has Plaintiff argued this custom claim.  Furthermore, this is a Fourth Amendment case and, as written, Plaintiff attempts to implicate Substantive Due Process, which is not at issue in this lawsuit.

[3] First, Douglas County incorporates Footnote 1 into this objection.  Second, Douglas County objects to the inclusion of the custom described herein because Plaintiff admitted that he does NOT contend that Wineinger did not properly control the K-9 on November 4, 2015.  *See* Plaintiff's Answers to Jay Wineinger's First Set of Interrogatories, No. 9 (Do you contend that Defendant Wineinger lost control of the police K-9 during the apprehension of Plaintiff on November 4, 2015? If so, please state each material fact upon which Plaintiff relies in alleging that Wineinger lost control of the police K-9 during Plaintiff's apprehension on November 4, 2015. ANSWER: Discovery is continuing. Supplemental Answer: No.) (emphasis added).

[4] First, Douglas County incorporates Footnote 1 into this objection.  Second, Douglas County objects to the inclusion of the custom described herein because Plaintiff cannot cite to a Douglas County policy that was ever enacted with this language.  Third, Judge Bataillon's Order did not even consider Plaintiff's argument

For each alleged unofficial custom or practice noted above, Plaintiff must also demonstrate that:

8.   Douglas County was deliberately indifferent to and/or gave tacit approval to such conduct after officials and/or officers and/or supervisor personnel were aware of the misconduct and/or non-conforming behavior and/or failed to stop and/or remedy the misconduct/non-conforming behavior and/or failed to train, monitor and/or supervise employees after learning of the misconduct/non-conforming behavior and/or the use of unreasonable, unnecessary and/or excessive force and/or use of K-9s.[5]

9.   Plaintiff's injuries resulted from Douglas County's unofficial customs or practices.[6]

## II.   Failure to Train, Supervise and/or Monitor[7] Claim against Douglas County:

---

that Douglas County has a custom or practice of deploying a K-9 when the suspect may be under the influence of drugs or alcohol and did not list it as a remaining claim. Document 137, p. 18. Plaintiff has not identified any other instances where a K-9 was utilized when the suspect may have been under the influence of drugs or alcohol as required to prove a custom claim. See Footnote 1. Plaintiff also admits that Wineinger, the only Douglas County employee on the scene, did not even know that Plaintiff was under the influence of drugs or alcohol on November 4, 2015. Document 92, p. 3. What's more, Ms. Talbitzer, Plaintiff's girlfriend at the time, did not even know whether Plaintiff was under the influence of drugs or alcohol at the time. Laney Deposition at 19:22 – 20:1. For all of these reasons, this claim should be excluded.

[5] Douglas County objects to this language and incorporates Footnote 1 herein. As written, Plaintiff has skipped the first element he must prove for each custom claim – the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the Douglas County's employees. *Corwin*, *supra*, 829 F.3d at 700. It also misrepresents the second element – which is deliberate indifference to or tacit authorization of unconstitutional misconduct by Douglas County's policymaking official after notice to that official of the misconduct. *Id.* The policymaking officials must be deliberately indifferent to *unconstitutional* misconduct – not just "non-conforming behavior" or policy violations as Plaintiff implies. Furthermore, as written, this recitation of the second element of a "custom" claim would permit expansive liability based upon the knowledge of any member of the listed class regardless of notice to Douglas County's actual policymaker.

[6] Douglas County objects to this language as it does not sufficiently frame the rigorous causal connection Plaintiff must establish. The Eighth Circuit requires proof of an injury "by acts pursuant to the governmental entity's custom, *i.e.*, that the custom was the moving force behind the constitutional violation." *Corwin*, *supra*, 829 F.3d at 700. "Where a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into *respondeat superior* liability." *Board of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 415, 117 S.Ct. 1382, 1394 (1997). Therefore, Douglas County requests that the third element of each alleged "custom" claim be changed to reflect this language.

[7] Douglas County requests that Plaintiff's claims for failure to train and failure to supervise be listed separately. While the elements are the same, Plaintiff must prove each element for each claim.

Elements:[8] **iv**

1.  As of November 4, 2015, Douglas County failed to supervise, train, and/or monitor its employees in the deployment and/or use of K-9s in the apprehension of persons to ensure that employees complied with Defendant's general orders, bureau directives and/or polices and/or failed to take appropriate action  once the County was aware of its employee's non-conforming behavior/conduct.

2.  Douglas County was deliberately indifferent to and/or gave tacit approval to the improper and/or non-conforming use of K-9s in the apprehension of suspects.[9]

3.  Plaintiff's injuries resulted from Douglas County's failure to train, monitor and/or supervise its employees.[10]

---

[8] Douglas County objects to Plaintiff's articulation of his "failure to train, supervise, and/or monitor" claims because it does not accurately reflect his burden of proof.  To establish a claim for failure to train, Plaintiff must prove: "(1) the government's training practices were inadequate, (2) the government was deliberately indifferent to the rights of others in adopting the training practices, such that the failure to train reflects a deliberate or conscious choice by the government, and (3) an alleged deficiency in the training procedures actually caused the plaintiff's injury."  *Parrish v. Ball*, 594 F.3d 993, 997 (8th Cir. 2010).  A claim for failure to supervise requires Plaintiff prove the same elements for a claim for failure to train.  *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1216-17 (8th Cir. 2013) (neither claim can succeed without evidence the municipality received notice of a pattern of unconstitutional acts committed by its employees). The instructions to the Pretrial Conference Order as provided on the form document on the website for the U.S. District Court for the District of Nebraska plainly states that the parties are to "[l]ist all legal issues remaining to be determined, setting out in detail each element of the claim or defense."  As written, Plaintiff has not listed "in detail each element of the claim."  Plaintiff's customs claims listed below do not demonstrate the legal elements he must prove.  Whether Douglas County employees complied with policies or whether non-conforming behavior was corrected is not the constitutional standard and not what controlling authority requires he prove.

[9] Douglas County objects to this language and incorporates Footnote 8 herein.  Improper or non-conforming uses of K-9s in the apprehension of suspects is not the constitutional standard at issue.  Deliberate indifference must be specific to the particular constitutional act at issue.  *Parrish, supra*, 594 F.3d at 998.  Alleging improper or non-conforming uses of K-9s in the apprehension of suspects is an inaccurate statement of the elements and suggests improper grounds for imposing liability.  In addition, prior unconstitutional acts must be factually very similar to the violation at issue.  *Connick v. Thompson*, 563 U.S. 51, 63, 131 S.Ct. 1350 (2011) (four earlier Brady violations unrelated to nondisclosure of the type of physical or scientific blood-test results that provided basis for reversal of § 1983 plaintiff's criminal convictions were insufficient to provide notice of a need to change Brady training).  Thus, uses of K-9s in the apprehensions of persons across a variety of situations is not grounds for finding deliberate indifference.

[10] Douglas County objects to this language and incorporates Footnote 6 herein.  This language does not sufficiently frame the rigorous causal connection Plaintiff must establish.  "Where a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into *respondeat superior* liability."  *Board of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 415, 117 S.Ct. 1382, 1394 (1997).  Therefore, Douglas County requests that the third element of each alleged "failure to train, supervise, and/or monitor" claim be changed to reflect this language.

III.    Excessive Force Claim Against Defendants Douglas County and Jay Wineinger, in his official capacity. [11] ▾

Elements:[12]

1.    Defendant Wineinger, in his official capacity, and/or Defendant Douglas County, acting through its employees, used excessive force against Plaintiff and/or failed to stop[13] the use of excessive force in

---

[11] Douglas County objects to the inclusion of Claim III (Excessive Force) in its entirety. Case law is clear that the only way to hold a municipality liable for an alleged constitutional violation is "if the violation resulted from (1) an 'official municipal policy,' (2) an unofficial 'custom,' or (3) a deliberately indifferent failure to train or supervise." *Corwin*, *supra*, 829 F.3d at 699-700. The fact that Wineinger, in his official capacity, remains in the lawsuit does not change this. To sustain the actions against Wineinger in his official capacity, Plaintiff must prove that the County *itself* caused the constitutional violation at issue. *Marsh v. Phelps County*, 902 F.3d 745, 751 (8th Cir. 2018); *see also Hafer v. Melo*, 502 U.S. 21, 25, 112 S.Ct. 358 (1991) ("Because the real party in interest in an official-capacity suit is the governmental entity and not the named official, 'the entity's 'policy or custom' must have played a part in the violation of federal law.'") (quoting *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099 (1985)); *Marchant v. City of Little Rock*, 741 F.2d 201, 204 (8th Cir. 1984) ("A § 1983 plaintiff must establish the existence of a city policy or custom under *Monell, supra*, in order to recover against city employees in their official capacities."); *Rogers v. City of Little Rock, Ark.*, 152 F.3d 790, 800 (8th Cir. 1998) ("Liability for city officials in their official capacities is another form of action against the city, and it requires the same showing that a policy or custom caused the alleged violation."); *Kelly v. City of Omaha*, 813 F.3d 1070, 1075 (8th Cir. 2016) ("A plaintiff who sues public employees in their official…capacities sues…the public employer and therefore must establish the municipality's liability for the alleged conduct. In order to state a claim for municipal liability under § 1983, a plaintiff must plead facts demonstrating that the defendants violated a constitutional right either "pursuant to official municipal policy" or as part of "a custom or usage with the force of law."); *Brewington v. Keener*, 902 F.3d 796, 800–01 (8th Cir. 2018) (in §1983 action alleging excessive force against the county sheriff and deputy sheriff in their official capacities, the suit "must be treated as a suit against the County" which could be found liable only if the execution of a county policy or custom caused the injury). To allow an excessive force claim to go forward against Douglas County would be to try to establish liability under a theory of *respondeat superior* or vicarious liability, which is not allowed. *Monell v. Dep't of Soc. Serv. of City of New York*, 436 U.S. 658, 691, 98 S.Ct. 2018 (1978); *Parrish v. Ball*, 594 F.3d 993, 997 and 1001 (8th Cir. 2010). For these reasons, the entire claim of excessive force (and its elements) should be removed from the Pretrial Conference Order.

[12] This is nothing more than an individual capacity claim against Wineinger. Inclusion of the elements of a claim that has been dismissed will confuse jurors. It dramatically lowers Plaintiff's evidentiary burden by eliminating proof of a prior widespread pattern of very similar constitutional violations necessary to prove Plaintiff's "custom" and "failure to" claims. "The Supreme Court has set a high bar for establishing municipal liability under § 1983, and demands careful analysis from district courts, to avoid any risk that liability could be imposed under a theory of *respondeat superior*." *Soltesz v. Rushmore Plaza Civic Center*, 847 F.3d 941, 947 (8th Cir. 2017) (citing *Pembaur v. City of Cincinnati,* 475 U.S. 469, 479, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986)).

[13] First, Douglas County incorporates Footnotes 11 and 12 herein. Second, this is an assertion of "failure to intervene" – a separate claim regarding proof above and beyond the application of excessive force. This

the apprehension of Plaintiff on November 4, ~~2020~~ 2015 and/or failed to provide timely medical treatment.[14]

2.    The force used was excessive because it was not reasonably necessary to take plaintiff into custody under the circumstances then and there present on November 4, 2015;

3.    As a direct result, plaintiff suffered injuries;

4.    Defendant Wineinger and/or Defendant's employees were acting under color of state law[15].

## IV.    Negligence Claims against Defendant Douglas County. [vi]

Elements:

1.    On November 4, 2015, Defendant Douglas County, acting through officers, officials, employees and/or agents, was negligent in one or more of the following ways[16]:

a)    Failing to exercise reasonable care to properly train employees regarding appropriate use of force and use of K-9 units

---

[14] First, Douglas County incorporates Footnotes 11 and 12 herein.  Second, Plaintiff has never asserted a claim for failure to provide appropriate medical care.  While Plaintiff has asserted a failure to timely call for medical assistance, undisputed evidence uncovered during the discovery process by Plaintiff reveals that this is false.  An ambulance was placed on stand-by before Argos was put into the attic.  Laney Deposition at 40:3-16; Friend Deposition at 26:5-12.  As soon as Special Deputy U.S. Marsal Friend saw Plaintiff's injuries, he called for the ambulance.  Friend Deposition at 47:21 – 48:3.  While the ambulance was en route to the scene, U.S. Marshal White, a medic, attended to Plaintiff.  Friend Deposition at 37:10-13, 39:5-11; Jones Deposition at 49:21 – 50:8.  This shows that such a claim cannot survive.  If Plaintiff wants to pursue a claim for failure to provide medical care or a failure to timely provide medical care, that claim must be against the USMS Task Force and/or its members, not Douglas County

[15] Douglas County objects and incorporates Footnote 13.

[16] Douglas County objects to Plaintiff beginning the elements of his negligence claim here as it clearly omits the very first element – duty.  Plaintiff has not said what legal duty Douglas County owed Plaintiff.

regarding the apprehension of suspects or other persons, including, but not limited to Frazier and/or failing to take timely, appropriate action to remedy non-conforming conduct.[17]

b)   Failing to exercise reasonable care in the supervision of employees regarding appropriate use of force and use of K-9 units regarding the apprehension of suspects or other persons, including, but not limited to Frazier and/or failing to take timely, appropriate action to remedy non-conforming conduct.[18]

c)   Failing to properly monitor employees regarding appropriate use of force and use of K-9 units regarding the apprehension of suspects or other persons, including, but not limited to Frazier and/or failing to take timely, appropriate action to remedy non-conforming conduct.[19]

d)   Failing to properly control and direct employees in the proper use of K-9s and/or failing to take timely, appropriate action to remedy non-conforming conduct.[20]

---

[17] Douglas County objects to the inclusion of this claim. The Court does not have jurisdiction over this claim because Douglas County maintains its sovereign immunity under Neb. Rev. Stat. § 13-910(2). Plaintiff's claim asserts that Douglas County failed at a basic policy level, rather than at an operational level, when it made the choice to train and supervise its deputies in a particular manner. Those are policy decisions and "precisely the kind of judgment the discretionary function exception is designed to shield." *Lambert v. Lincoln Pub. Schools*, 306 Neb. 192, 202, 945 N.W.2d 84, 91 (2020). Thus, Douglas County is immune from suit as to those specific claims.

[18] Douglas County objects and incorporates Footnote 17.

[19] Douglas County objects and incorporates Footnote 17.

[20] Douglas County objects to the inclusion of this claim. Wineinger sent the following interrogatory to Plaintiff: "Do you contend that Defendant Wineiger lost control of the police K-9 during the apprehension of Plaintiff on November 4, 2015? If so, please state each material fact upon which Plaintiff relies in alleging that Wineinger lost control of the police K-9 during Plaintiff's apprehension on November 4, 2015." Plaintiff's answer was "no." *See* Plaintiff's Answers to Jay Wineinger's First Set of Interrogatories, No. 9.

9

e)      Failing to ensure that its employees exercised reasonable, less extreme, unnecessary and/or less lethal measures of force in the apprehension of persons, including, but not limited to Frazier and/or failing to take timely, appropriate action to remedy non-conforming conduct.

f)      Failing to properly train, monitor, and supervise its employees to exercise reasonable care in the apprehension of suspects and others, including, but not limited to Frazier and/or failing to take timely, appropriate action to remedy non-conforming conduct.

g)      Failing to properly monitor, supervise, train and/or otherwise ensure that employee(s) conduct comported with Defendant's policies, orders, directives, and procedures regarding the safe, reasonable, least restrictive and less lethal means of apprehending persons and/or failing to take appropriate action when the County became aware of employee(s) non-compliance with said policies, orders, directives and/or procedures regarding use of K-9s.

h)      Failing to monitor, supervise, train and/or ensure that Defendant's employees gave proper warning to Mr. Frazier and/or failure to give proper warning to Frazier regarding the use of the K-9 unit during his apprehension on November 4, 2015.[21]

---

[21] Douglas County objects to the inclusion of this claim. First, Douglas County objects because the record is undisputed that Plaintiff admitted to hearing at least one K-9 warning and understanding the warning to mean the dog would "probably" bite him. *See* Plaintiff's Responses to Douglas County's First Set of Requests for Admission, Nos. 4, 7, 18, 28; *see also* Frazier's Deposition at 96:25 - 97:8, 100:10-21, 105:11-14, 116:1-7, 142:1-21. This claim cannot survive Plaintiff's admission of hearing and understanding at

      i)        Failing to monitor, supervise, train, and/or ensure that Defendant's employees timely and properly recalled the K-9 unit after Mr. Frazier repeatedly screamed, pleaded, and asked for it to be called off as it viciously attacked him and/or failure to timely and properly call of the K-9.

      j)        Failing to properly train, supervise, and/or monitor its employees in providing for and/or ensuring appropriate and timely medical treatment to Frazier.[22]

      l)        Failing to properly train, supervise, monitor, and/or discipline its employees for taking photographs of and/or improperly photographing and/or commenting on photographs of and/or distributing photographs of Frazier's injuries.[23]

   2.     Defendant Douglas County's negligence was the proximate cause of Plaintiff's injuries.

---

least one K-9 warning. Second, Judge Bataillon's October 20, 2020 Order does not identify "failure to give proper warning" as a remaining claim. To the contrary, Judge Bataillon found, "Both parties agree that Frazier was told that Argos would bite him if Frazier did not surrender." Document 137, p. 3. He also found, "Frazier recalled being warned that the dog would bite him if he did not surrender." *Id.* at p. 15. The only instances where Plaintiff asserts a failure to warn in any of the briefings at summary judgment is where he asserts that the dog itself failed to warn Plaintiff. Document 92, p. 4; Document 102, pp. 4, 10, and 30; Document 105, p. 11. The K-9 is not an employee of Douglas County; it is personal property. Neb. Rev. Stat. § 54-601. The failure to warn must be as to an employee of Douglas County and Judge Bataillon found that Wineinger did warn Plaintiff. Document 137, pp. 3, 15.

[22] Douglas County objects to this claim and incorporates Footnote 14.

[23] Douglas County objects to the inclusion of this claim. The record is clear that nobody from Douglas County took photographs of Plaintiff. Wineinger Deposition at 55:20-22. The only officers who took photographs were OPD officers who were there as cross-deputized Special Deputy U.S. Marshals. Laney Deposition at 4:23 – 5:4, 29:22 – 30:21; Friend Deposition at 40:16-19; Jones Deposition at 69:7-10. Douglas County cannot be sued based on nothing but the alleged negligence of federal actors who took photographs when those people were not acting under state law or at the direction of Douglas County. See Footnote 13.

3.     Plaintiff has suffered past and present scarring and

disfigurement, emotional distress and compensatory damages and has

incurred medical bills for injuries proximately caused by the November 4,

2015 dog attack[24] and will continue to suffer from these injuries, permanent

scarring, disfigurement and compensatory damages into the future and may

incur future medical bills.

<u>Douglas County's Affirmative Defenses</u>

Douglas County disputes all of Plaintiff's negligence claims, denies any allegation or conclusion that Frazier is entitled to any of the relief and/or damages requested, and asserts the following affirmative defenses:

- Douglas County states that, pursuant to Neb. Rev. Stat. § 13-910(2), Frazier's claims that Douglas County failed to exercise reasonable care to properly train, supervise, and monitor DCSO employees regarding appropriate use of force and use of K-9s regarding the apprehension of Frazier must fail because Douglas County has sovereign immunity, thereby depriving this Court of jurisdiction. Plaintiff's objection:  Defendant did not plead this affirmative defense in its answer. (Doc.  #38)  Plaintiff further objects to 'sovereign immunity' being included in this pretrial conference order, either as an affirmative defense or as an objection to Plaintiff's issues, as Defendant never raised sovereign immunity as a defense and is not mentioned in the County's amended answer. [vii]

- Douglas County states that it cannot be held liable for negligence because Wineinger's use of his K-9 to locate and apprehend Frazier in order to execute two warrants for his arrest was justified under Neb. Rev. Stat. § 28-1412. Plaintiff's objection:  Defendant did not plead this affirmative defense in its answer. (Doc.  #38) [viii]

---

[24] Douglas County objects to the use of the phrase "dog attack" as the entire basis of this lawsuit is the use of force with a trained police K-9.  The phrase "dog attack" is unfairly prejudicial as it carries a different connotation.

- Douglas County states that it cannot be held liable for negligence because Wineinger's force was objectively reasonable.
  Plaintiff's objection:  Defendant did not plead this affirmative defense in its answer. (Doc.  #38) [viii]

- Douglas County states that it cannot be held liable for the actions of the USMS FTF and its members.

- Douglas County states that Frazier assumed the risk of any injury he suffered as a result of his apprehension by the K-9 and claims the following:

  o Frazier knew and understood that if he did not surrender to law enforcement the K-9 would be released into the attic and would bite him;

  o Despite the specific knowledge that the K-9 would be released into the attic and bite him, Frazier voluntarily exposed himself to the specific danger by choosing to remain concealed in insulation 10-15 feet from the attic entrance;

  o Despite the specific knowledge that the K-9 would be released into the attic and bite him, Frazier voluntarily exposed himself to the specific danger by choosing not to reveal himself to Wineinger or the USMS Task Force;

  o Despite the specific knowledge that the K-9 would be released into the attic and bite him, Frazier voluntarily exposed himself to the specific danger by choosing not to announce his presence to Wineinger or the USMS Task Force;

  o Despite the specific knowledge that the K-9 would be released into the attic and bite him, Frazier voluntarily exposed himself to the specific danger by choosing not to agree to surrender to Wineinger or the USMS Task Force;

  o Frazier saw the K-9 after it was placed into the attic and still voluntarily exposed himself to the specific danger by choosing not to announce his presence, reveal himself, or surrender to Wineinger or the USMS Task Force;

- o Frazier's injuries occurred as a result of his voluntary and knowing exposure to the specific danger that if he did not surrender that he would be bitten by the K-9; and
- o Frazier's assumption of risk totally bars Plaintiff from any recovery as to Plaintiff's negligence claim.

- Douglas County states that Frazier himself was negligent in one or more of the following ways:
  - o Frazier failed to surrender to law enforcement despite being given multiple opportunities to do so prior to law enforcement's entrance into the residence;
  - o Frazier failed to surrender to law enforcement despite being given multiple opportunities to do so after law enforcement's entrance into the residence;
  - o Frazier barricaded himself into his residence in an attempt to evade arrest;
  - o Frazier absconded to the attic of his residence in an attempt to evade arrest;
  - o Frazier crawled 10-15 feet away from the attic entrance in an attempt to evade arrest and conceal his presence in the attic;
    ==Plaintiff's objection:  Defendant did not plead this affirmative defense in its answer.  (Doc.  #38)== [viii]
  - o Frazier concealed himself in insulation in the attic to evade arrest;
  - o Frazier concealed himself in an area that posed a risk to the safety of any officer who would try to follow;
    ==Plaintiff's objection:  Defendant did not plead this affirmative defense in its answer.  (Doc.  #38)== [viii]
  - o Frazier heard and ignored multiple warnings and opportunities to surrender from the USMS Task Force prior to the arrival of the K-9;
  - o Frazier heard and ignored multiple warnings and opportunities to surrender after arrival of the K-9;
  - o Frazier heard and ignored at least one warning that he would be bitten by the K-9 if he did not surrender to law enforcement;

- o Frazier knew that a K-9 was going to be placed into the attic and would probably bite him and still failed to surrender to law enforcement;

- o Frazier admitted that he attempted to "play hide and seek" with the K-9; and

  Plaintiff's objection:  Defendant did not plead this affirmative defense in its answer.  (Doc. #38) [viii]

- o Frazier saw the K-9 in the attic and still chose not to surrender to law enforcement.

- Douglas County states that Frazier's own negligence proximately contributed to his damages.

- Any contributory negligence chargeable to Frazier proportionately diminishes any amount awarded as damages for an injury attributable to his contributory negligence.  If Frazier's contributory negligence is equal to or greater than the total negligence of Douglas County, Frazier is barred from recovery.

CLAIMS I-IV Damages:     If Defendants[25] violated Plaintiff's constitutional, statutory or common law rights (as noted in Claims I-IV above), what damages is Plaintiff entitled to, including, but not limited to:  past, present and future[26] scarring and disfigurement, pain,

---

[25] Douglas County objects to the use of the plural form of "Defendants" because there is only one Defendant – Douglas County.  See Footnote 11.

[26] Douglas County objects to each and every mention or request for future damages.  "Although the amount of future medical expenses is not required to be established with mathematical certainty before the plaintiff may recover their value, conjecture or possibility regarding future medical expenses is insufficient to submit to a fact finder the issue of future medical expenses.  Before a trial court may submit to a jury any question concerning permanency of a plaintiff's injury and future medical expense, the plaintiff must have presented sufficient relevant evidence for the jury to determine whether the plaintiff has sustained permanent injury and will incur future medical expenses as a result of the injury."  Renne v. Moser, 241 Neb. 623, 634–35, 490 N.W.2d 193, 200-01 (1992) (emphasis added).  Plaintiff has not presented "sufficient relevant evidence" for the question of future damages to be presented to a jury.  During discovery, Douglas County's Requests for Production of documents included requests for all medical bills and statements pertaining to the injuries sustained by Plaintiff for which he seeks recovery in this lawsuit; all receipts for the purchase of drugs or medicine taken by Plaintiff in connections with the injuries sustained by him as a result of the K-9 engagement on November 4, 2015; and all documents evidencing permanent scarring, disfigurement, physical, emotional, and psychological injuries, pain, suffering, inconvenience, mental anguish, and humiliation that Plaintiff alleges resulted from the K-9 engagement on November 4, 2015.  The only documents produced in response to these requests were the City of Omaha Rescue Squad Bill and CHI bills from November 4, 2015, through November 16, 2015.  See Plaintiff's Responses to Douglas County's First Set of Requests for Production, Request Nos. 1, 2, and 8.  Furthermore, Douglas County sent Plaintiff an

suffering, humiliation, inconvenience, compensatory and emotional distress damages, medical bills incurred, punitive damages[27], attorney's fees and costs and any and all other damages deemed appropriate by the jury and/or the Court. **ix**

Plaintiff's Special Damages:

> CHI and Creighton University Medical Center medical bills: $176,090.76
> Omaha Fire and Rescue:  $934.20

Plaintiff's Permanent Injuries: Scarring to Plaintiff's face, neck, ear and extremities and emotional distress/compensatory damages.

Pending Motions

- Douglas County's Second Motion *in Limine* (Document 155)


**(D)    Witnesses.**  All witnesses, including rebuttal witnesses, expected to be called to testify by plaintiff, except those who may be called for impeachment purposes as defined in NECivR 16.2(c) only, are: *see* Frazier's Witness List (Attached hereto as Exhibit C)

---

interrogatory seeking each "each health care practitioner (including general practitioners, mental health care practitioners, substance abuse counselors, and in-patient treatment center practitioners) Plaintiff has consulted with in relation to any injury Plaintiff claims to have suffered since November 4, 2015, as a result of" the K-9 engagement and, for specific information for each practitioner identified.  Plaintiff's answer was limited to the immediate medical treatment he received in November 2015 and while in jail on the burglary charge.  *See* Plaintiff's Answers to Douglas County's First Set of Interrogatories,, No. 11.  Plaintiff has not produced any evidence to support a claim for future medical expenses and "conjecture or possibility regarding future medical expenses is insufficient to submit to a fact finder the issue of future medical expenses." *Renne*, *supra*, 241 Neb. at 634–35, 490 N.W.2d at 200-01.

[27] Douglas County objects to the inclusion of any request for punitive damages.  Douglas County is the real party in interest on Plaintiff's remaining "official capacity" claim and it is immune from punitive damages under § 1983.  *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271, 101 S.Ct. 2748 (1981) ("[W]e hold that a municipality is immune from punitive damages under 42 U. S. C. § 1983."); *Fields v. City of Omaha*, 810 F.2d 830, 835, fn 3 (8th Cir. 1987) (punitive damages are available against an individual defendant in a § 1983 action, but the city may not be held liable for punitive damages because municipalities are immune from punitive damages under § 1983). Further, punitive damages are not allowed under Nebraska state law and should be stricken from Plaintiff's negligence claim. "Under Nebraska law, 'punitive, vindictive, or exemplary damages contravene Neb. Const. art. VII, § 5, and thus are not allowed in this jurisdiction.'"  *O'Brien v. Cessna Aircraft Co.*, 903 N.W.2d 432, 458 (Neb. 2017) (quoting *Distinctive Printing & Packaging Co. v. Cox*, 232 Neb. 846, 857, 443 N.W.2d 566, 574 (1989), citing *Miller v. Kingsley*, 194 Neb. 123, 230 N.W.2d 472 (1975)).

All witnesses expected to be called to testify by defendant, except those who may be called for impeachment purposes as defined in NECivR 16.2(c) only, are: *see* Douglas County's Witness List (Attached hereto as Exhibit D)

It is understood that, except upon a showing of good cause, no witness whose name and address does not appear herein shall be permitted to testify over objection for any purpose except impeachment. A witness who has been identified as offering testimony solely to establish foundation for an exhibit shall not be permitted to testify for any other purpose, over objection, unless such witness has been disclosed pursuant to Federal Rule of Civil Procedure 26(a)(3). A witness appearing on any party's witness list may be called by any other party.

**(E)     Expert Witnesses' Qualifications.**  Experts to be called by plaintiff and their qualifications are:

Robert Bertellotti, M.D.
- Graduated Creighton University, School of Medicine, 2003
- One-year residency, Loyola University Medical Center in Illinois; five-year residency, General Surgery at Creighton University, School of Medicine
- Medicine License issued in 2009.

Dr. Bertellotti's deposition will be read at trial. [x]

Douglas County objects to the inclusion of Dr. Bertellotti as an expert witness on the Pretrial Order.  Plaintiff did not disclose Dr. Bertellotti as a non-retained expert witness or comply with the requirements of Fed. R. Civ. P. 26(a)(2)(C) by the deadline of July 1, 2019, that was established by the Court.  See Document 44, p. 2.  Dr. Bertellotti's testimony is currently the subject of a pending motion *in limine*.

Plaintiff's argument:  Not once prior to February 22, 2021 did defense counsel ever allege prejudice due to alleged non-disclosure of Dr. Bertellotti.  Plaintiff disclosed Dr. Bertellotti in his Rule 26 disclosures and provided his opinions in an email to defense counsel. Defense counsel participated in the December 11, 2019 trial deposition of Dr. Bertellotti

17

and further agreed that all objections would be made during the deposition. Dr. Bertellotti was listed as an expert in the August 2021 PTC Order provided to the Court and it was indicated that his 'deposition would be read at trial.'  (See Doc. 160, 160-1 through 160-8 and 161)

**(F)  Voir Dire.**  Counsel have reviewed Federal Rule of Civil Procedure 47(a) and NECivR 47.2(a) and suggest the following with regard to the conduct of juror examination:

Frazier requests 2.0 hours of voir dire.

Douglas County objects to Frazier's proposed time allotment and states that without exchanging proposed voir dire questions, it cannot be determined how long it will take each party to conduct voir dire.

Objection:  Plaintiff's counsel voir dire is work product and it will not be disclosed before trial. [xi]

**(G)  Number of Jurors.**  Counsel have reviewed Federal Rule of Civil Procedure 48 and NECivR 48.1 and suggest that this matter be tried to a jury composed of _____ members.

Frazier requests 7 jurors for the civil rights claim against Douglas County.

Douglas County requests that the civil rights claim be tried to a jury composed of nine (9) members.

The parties are in agreement that, in accordance with state law, the negligence claim against Douglas County will be tried to the bench.

**(H)  Verdict.**  The parties [will] [will not] stipulate to a less-than-unanimous verdict.  (If applicable), the parties' stipulation is: _____.

Frazier will stipulate to a less-than-unanimous verdict of 6-1.

Douglas County will not stipulate to a less-than-unanimous verdict.

**(I)     Briefs, Instructions, and Proposed Findings.**   Counsel have reviewed NECivR 39.2(a), 51.1(a), and 52.1, and suggest the following schedule: trial briefs, proposed jury instructions, and proposed findings of fact shall be filed four (4) business days before the first day of trial.

**(J)     Length of Trial.**   Counsel estimate the length of trial will consume approximately four (4) days or less.

**(K)     Trial Date.**   Trial is set to begin March 23, 2021.

_____
Kathleen M .Neary (NE #20212)
Attorney for Plaintiff
Powers Law
411 South 13th Street, Suite 300
Lincoln, NE  68508
T – (402) 474-8000
F – (402) 474-5006
kathleen@vpowerslaw.com

_____
Meghan M. Bothe (NE #25208)
Jimmie L. Pinkham, III (NE #25534)
Timothy K. Dolan (NE #20978)
Deputy County Attorneys
909 Civic Center
Omaha, NE 68183
T – (402) 444-7622
F – (402) 444-6817
meghan.bothe@douglascounty-ne.gov
jimmie.pinkham@douglascounty-ne.gov
tim.dolan@douglascounty-ne.gov

BY THE COURT:

_____

---

[i]   Plaintiff objects to naming Jay Wineinger, in his official capacity, as a named defendant in the caption. Judge Bataillon's summary judgment ruling separately analyzed the liability of Douglas County (Filing No. 137, at CM/ECF pp. 17-18) from that of Jay Wineinger in his official capacity (Filing No. 137, at CM/ECF pp. 14-17). After doing so, Judge Bataillon denied defendant Douglas County's motion for summary judgment, and in a separate paragraph of the order, denied "defendant Wineinger's motion for summary judgement for liability in his official capacity." (Filing No. 137, at CM/ECF p. 20).

So, based on my reading of the summary judgment order, Douglas County and Jay Wineinger, in his official capacity, were considered separate defendants by the presiding district judge. The district judge may agree with the parties: that only one defendant remains. But based on the summary judgment analysis and ruling, I will not make that decision. Plaintiff's motion to strike Jay Wineinger, in his official capacity, from the caption is therefore denied.

I further note that even if Douglas County and Jay Wineinger, in his official capacity, are the same defendant, effectively naming that defendant twice in the caption will have no substantive impact on the outcome of this case.

[ii]   During the March 2, 2021 pretrial conference with the Court, Plaintiff's counsel concluded her client does not have an "official policy" constitutional claim against the defendant(s).

Moreover, Judge Bataillon's summary judgment ruling dismissed the claims against Jay Wineinger, in his individual capacity, based on qualified immunity. (Filing No. 137, at CM/ECF p. 18-19).

[iii]   Defendant(s)' objections in footnotes 1-6 (as to Plaintiff's Unofficial Custom or Practice Claim) are granted in part and denied in part.

To recover on a claim that Defendant(s) had an unofficial custom or practice authorizing the use of excessive force, Plaintiff must prove Defendant(s)' custom or practice authorized excessive force in violation of the Constitution. Plaintiff's allegations that a Defendant authorized excessive force "contrary to its general orders and bureau directives" is not the standard for proving liability under 42 U.S.C. § 1983.

As to the factual arguments raised in Defendant(s)' objections at footnotes 1-6, I am not convinced a trial on those issues is foreclosed by Plaintiff's interrogatory responses or Judge Bataillon's summary judgment ruling.

Finally, while not precisely worded as such, Plaintiff's allegation that the officers had an unofficial custom of unnecessarily using threats, intimidation, and coercion to effectuate an arrest is encompassed within the allegations of excessive force raised throughout this lawsuit. Whether this allegation is actionable under the Fourth Amendment is for the presiding judge, and possibly the jury, to decide.

Rather than ask the parties to again attempt to draft the controverted issues on Plaintiff's "Unofficial Custom or Practice Claim," the undersigned magistrate judge has redrafted the section as follows:

**I.      Unofficial Custom or Practice Claim**

1)      On November 4, 2015, Douglas County, acting through its officers, had a continuing, widespread, persistent pattern of:

a.      using excessive force by deploying canines off-leash to apprehend suspects when:

i.      less lethal or potentially harmful options could have been used,

      ii.     the officers knew or had reason to know the suspect had no means to resist arrest or escape,

      iii.    the officers had no reason to believe the suspect was armed, and/or

      iv.    the officers had reason to believe the suspect may be under the influence of drugs or alcohol.

b.     failing to command the canine to disengage and/or to call off the canine as soon as the suspect was subdued or complied with the officer's direction.

c.     failing to reasonably control the canine during the apprehension of suspects.

d.     using a canine to unnecessarily intimidate, coerce, or frighten a suspect.

2)     Defendant(s)' policymaking officials were deliberately indifferent to or tacitly authorized their officers' use of excessive force when deploying canines to apprehend suspects by failing to:

a.     prohibit this conduct;

b.     impose discipline for such conduct; and/or

c.     train monitor and/or supervise their officers to prevent such conduct.

3)     Plaintiff was injured by Defendant(s)' unofficial custom or policy of using excessive force to apprehend suspects by deploying canines. Such injuries are more specifically described in the "CLAIMS I-III Damages" section below.

iv     Defendant(s)' objections at footnotes 7-10 are sustained in part and overruled in part.

Plaintiff alleges Defendant(s) failed to "Train, Supervise and/or Monitor" employees to ensure their compliance with Defendant(s)' "general orders, bureau directives and/or polices and/or failed to take appropriate action once the County

was aware of its employee's non-conforming behavior/conduct." However, to prevail on this § 1983 claim Plaintiff must prove Defendant(s) failed to train, supervise or monitor to ensure that their employees complied with the Fourth Amendment, a standard which may or may not be reflected in Defendant(s)' "general orders, bureau directives and/or polices."

Rather than ask the parties to again attempt to draft the controverted issues on Plaintiff's claim for Failure to Train, Supervise, and/or Monitor, the undersigned magistrate judge has redrafted the section. For clarity, the claims for "failure to train" and "failure to monitor and/or supervise" are listed separately. While both claims have the same elements, the evidence and/or proof of liability would be distinct for a failure in training and a failure to then supervise/monitor an employee. Listing them separately does not change Plaintiff's burden; it just clarifies that there would be different factual underpinnings between the two claims. The court has redrafted those claims as follows:

## II.       Claim for Failure to Train, Supervise and/or Monitor:

Failure to Train:

1)      Defendant(s) provided inadequate training to its employees to prevent their use of excessive force when apprehending suspects, including by deploying canines.

2)      Defendant(s) were deliberately indifferent to the rights of others in adopting the training practices, such that the failure to train reflects their deliberate or conscious choice, and

3)      The lack of adequate training caused the plaintiff's injuries.

23

Failure to Supervise and/or Monitor:

1)      Defendant(s) failed to supervise and/or monitor their employees to prevent the employees from using excessive force when apprehending suspects, including by deploying canines;

2)      Defendant(s) were deliberately indifferent to the rights of others in failing to supervise and/or monitor their employees' use of force, such that this failure reflects their deliberate or conscious choice, and

3)      Defendant(s)' lack of supervision and/or monitoring caused the plaintiff's injuries. Such injuries are more specifically described in the "CLAIMS I-III Damages" section below.

v    **Defendant(s)' objections at footnotes 11-15 are sustained.**

Plaintiff's third listed claim is entitled "III. Excessive Force Claim against the County of Douglas and Jay Wineinger, in his Official Capacity." This claim is listed separate and apart from Plaintiff's § 1983 claims for "Unofficial Custom or Practice" and "Failure to Train, Supervise and/or Monitor." But the allegations recited by Plaintiff for this separate excessive force claim mirror the previous allegations against Jay Wineinger, in his individual capacity. Essentially, Plaintiff is alleging Jay Wineinger's use of a canine to apprehend Plaintiff was excessive force, and for that, Jay Wineinger, in his official capacity, should be liable.

Under 42 U.S.C. § 1983, Plaintiff cannot recover against Jay Wineinger, in his official capacity, based on *respondeat superior* theory. Defendant(s)' objection to Plaintiff's separate constitutional claim entitled "III. Excessive Force. . .," is sustained.

vi    Plaintiff's fourth claim asserts a negligence claim under the Nebraska Political Subdivision Tort Claims Act.  Note: The court did not exclude allegation "k" from Plaintiff's listing of negligence allegations. An allegation "k" was not in Plaintiff's submitted version.

The court did not rewrite the elements of negligence as articulated by the Plaintiff, or the elements of contributory negligence and assumption of the risk as drafted by Defendnt(s). Although many of the allegations in each category appear redundant, Defendant(s) are not prejudiced by any of those apparent redundancies. The PSTCA claim will be tried to bench, and Judge Bataillon will make the ultimate decision on whether any negligence theory or affirmative defense, and proof thereof, is legally sufficient.

Defendants' objections at footnotes 16-24 are granted in part and denied in part as follows:

As to the objection at footnote 16, as a matter of law, Douglas County had a duty to exercise reasonable care when apprehending criminal suspects. This duty is not a controverted issue.

As to the sovereign immunity objection at footnotes 17, 18, and 19, the Defendants' objections must be overruled. Douglas County maintains it has sovereign immunity under Neb. Rev. Stat. § 13-910(2) for Plaintiff's claims alleging Douglas County was negligent in failing to train, supervise and monitor its deputies on the use of canines to apprehend criminal suspects. Douglas County argues that it is immune from those negligence theories (proposed pretrial order, paragraphs IV(1)(a)-(c)) pursuant to the "discretionary function exception" to the Nebraska PSTCA, arguing training and supervision policy decisions are "precisely the kind of judgment the discretionary function exception is designed to shield." Lambert v. Lincoln Pub. Schools, 306 Neb. 192, 202, 945 N.W.2d 84, 91 (2020).

To maintain sovereign immunity pursuant this "discretionary function exception" of the PSTCA, the government entity must assert the discretionary function exception as an affirmative defense in its answer. Parker v. Lancaster Cty. Sch. Dist. No. 001, 591 N.W.2d 532, 539 (Neb. 1999) (quoting Neb. Rev. Stat. § 13–910(2). See also Wise v. Omaha Pub. Sch., 271 Neb. 635, 639, 714 N.W.2d 19, 22 (2006) ("The exceptions set forth in § 13–910 are affirmative sovereign immunity defenses to claims brought pursuant to the PSTCA."); Harris v. Omaha Hous. Auth., 269 Neb. 981, 988, 698 N.W.2d 58, 65 (2005) (noting that the exceptions in § 13-910 are affirmative defenses on which the defendant claiming the exception has the burden of proof). And while somewhat distinct, this court has also previously found that a defendant claiming a plaintiff's noncompliance with the PSTCA must make that assertion as an affirmative defense. Anderson v. Nebraska, 2018 WL 4599832, at *5 (D. Neb. Sept. 25, 2018) ("noncompliance [with the PSTCA] must be raised as an affirmative defense").

Here, Douglas County has not alleged sovereign immunity as an affirmative defense in its Answer (Filing No. 38), or in the Rule 26(f) Report, (Filing No. 43, at CM/ECF p. 4). So, as to the claims alleging the County failed to train, supervise and monitor its officers regarding the use of canines, the County has waived any claim of sovereign immunity under the "discretionary function exception" of the PSTCA.

The County's objections in footnote 20, 21, and 23, which argue there are no facts to support the footnoted allegations, are overruled. These factual issues will be decided at trial, or if they have already been decided as stated within Judge Bataillon's summary judgment ruling, they need not be stricken from the pretrial conference order since Judge Bataillon is the finder of fact on the PSTCA claim.

For similar reasons, the objection in footnote 24 is overruled. Judge Bataillon's decision on the PSTCA claim will not be swayed based on Plaintiff's use of the descriptive phrase "dog attack" when listing the allegations of that claim.

The County's objection in footnote 22, which objects to an allegation of negligence by arguing Plaintiff has never asserted a claim for failure to provide appropriate medical care, is overruled. Paragraph 22 (k) of Plaintiff's complaint alleges the defendants "failed to timely call for medical assistance for the Plaintiff." Judge Bataillon's summary judgment ruling does not decide this issue. And to the extent the remainder of footnote 22 asserts there are no facts to support the allegation, that issue will be decided by Judge Bataillon upon hearing the trial evidence.

[vii]   Plaintiff's objection to the County's sovereign immunity defense is sustained. See discussion at endnote vi.

[viii]   Plaintiff's objections to the green highlighted allegations are overruled. Plaintiff bears the burden of proving the County failed to exercise reasonable care. Allegations which explain why the County asserts it did exercise reasonable care are not affirmative defenses. And allegations which describe Plaintiff's own conduct as a cause of his injuries fall under the County's defense of contributory negligence—an affirmative defense which is alleged in its Answer.

[ix]   The objection in footnote 25, objecting to the use of "Defendants" rather than Defendant, is overruled. Judge Bataillon's summary judgment ruling seems to state that claims remain against both Douglas County and Jay Wineinger, in his official capacity. If my interpretation is incorrect, the discrepancy will be remedied by Judge Bataillon when instructing the jury on the § 1983 claims, or upon his own consideration of the PSTCA claim. See also, endnote i.

The objection at footnote 26, arguing the facts will not support a claim for future damages, is overruled. That issue will be decided at trial.

The objection in footnote 27 is sustained. Plaintiff cannot recover punitive damages against the County under either 42 U.S.C. § 1983 or Nebraska's Political Subdivision Tort Claims Act.

[x] Defendant(s)' objection to listing Dr. Bertellotti as an expert witness for trial is overruled. While Plaintiff may not have complied with the requirements of Fed. R. Civ. P. 26(a)(2)(C) as to this witness, Defendant(s) did not object to this expert in the previous pretrial conference draft order or at Dr. Bertellotti's deposition. By failing to promptly object, Defendant(s) have waived the right to object to any procedural oversight by the plaintiff is failing to comply with the expert reporting requirements. However, this waiver applies to only those issues addressed during his deposition or in any written expert report.

[xi] Voir dire will be conducted in part by Judge Bataillon, with approximately 30 minutes of follow up questioning by counsel. While a party's anticipated voir dire is work product, if a party wants Judge Bataillon to ask a specific question, that party must disclose it to opposing counsel and the judge prior to trial.